349 So.2d 164 (1977)
Talbot D'ALEMBERTE, Chairman, W. George Allen, LeRoy Collins, E. Harris Drew, John A. Grant, Jr., Lois Harrison, Charlotte F. Hubbard, James L. Pleitz and John D. Rawls, Members of and Constituting the State of Florida Commission On Ethics, Appellants,
v.
William (Dale) ANDERSON, Appellee.
No. 49851.
Supreme Court of Florida.
May 26, 1977.
Rehearing Denied September 7, 1977.
*165 Robert L. Shevin, Atty. Gen., and William C. Sherrill, Jr. and Thomas A. Beenck, Asst. Attys. Gen., for appellants.
Walter M. Meginniss and William F. Crary of Crary, Buchanan & Meginniss, Stuart, for appellee.
SUNDBERG, Justice.
Appellant has prosecuted an appeal in this Court following a decision of the District Court of Appeal, First District, declaring Section 112.313(1), Florida Statutes (1973), unconstitutional. Jurisdiction is predicated on Article V, Section 3(b)(1), Florida Constitution.
In May of 1974, M & W Land, Inc., a foreign corporation, (M & W) filed a petition to annex certain lands it owned into the city of Stuart, Florida. M & W was involved in a joint venture with Rossmoor Corporation. Rossmoor was to develop the land. The annexation was controversial for several reasons. For one thing, the annexation was to result in a 20 percent increase in the size of the city of Stuart. For another, some members of the community considered the annexation an attempt by M & W to avoid planned unit development zoning regulations which had recently been enacted for Martin County, Florida, in which Stuart is situate.
In August, 1974, Rossmoor invited the City Commission and other city employees of Stuart to visit Laguna Hills, a residential community developed by Rossmoor in California. The invitation included eighteen spouses and guests of the public officials and employees. Rossmoor wanted the Commission to see an example of the planned community concept proposed for the land which was to be annexed. Commissioner Anderson (the appellee herein) and his wife agreed to make this trip on the weekend of August 23-25, 1974.
Before leaving for California, the City Commission asked the Stuart City Attorney whether, in his opinion, making the "fact finding" trip would violate the Sunshine Law. The City Attorney informed the Commission that he thought no violation was present. Appellee expressly declared that he did not intend to be swayed by Rossmoor's generosity. Nevertheless, newspaper articles printed before the trip was made demonstrated public concern over possible compromise of the Commission's neutrality by acceptance of the invitation.
Appellee and his wife made the trip to California. Rossmoor paid for their air fare to and from California, hotel accommodations, limousine service, evening meals, and one midday meal. The value of the trip accepted by appellee and his wife was $1,223.82. The total cost to Rossmoor for all who made the trip was $25,691.60.
After the Stuart City Commission passed two ordinances which annexed the land to be developed by Rossmoor, a complaint against appellee was filed with the appellant Commission on Ethics. A member of the Commission was appointed as hearing examiner, and a fact-finding hearing was held on November 21, 1974. Subsequent to the hearing, the examiner filed his report with the Commission. On December 13, 1974, the full Commission found that appellee violated Section 112.313(1), Florida Statutes (Supp. 1974), by accepting the trip. This statute provides:
ACCEPTANCE OF GIFTS PROHIBITED.  No officer or employee of a state agency, or of a county, city, or other political subdivision of the state, or any legislator, or legislative employee shall *166 accept any gift, favor, or service, of value to the recipient, that would cause a reasonably prudent person to be influenced in the discharge of official duties.
By a 4 to 3 decision, the Commission voted to transmit the finding of violation to the Governor and to the State Attorney for the Twelfth Judicial Circuit with the recommendation that no further action be taken.
Appellee petitioned the First District Court of Appeal for certiorari review of the Ethics Commission's decision. Certiorari was granted. On June 30, 1976, the court issued an opinion declaring Section 112.313(1), Florida Statutes (1973) as amended by Ch. 74-177, § 3, Laws of Florida, unconstitutionally vague and quashing the decision of appellant Commission. Specifically, the District Court's opinion holding the former section unconstitutionally vague was directed at the phrase "that would cause a reasonably prudent person to be influenced in the discharge of official duties."
It should be noted that Section 112.313(1), Florida Statutes (Supp. 1974), was amended by Ch. 75-208, § 4, Laws of Florida, and now appears in relevant part as Section 112.313(2)(a), Florida Statutes (1975). The portion of the statute found unconstitutional remains unchanged by the amendment.
Governmental conflicts of interest compose "an evil which endangers the very fabric of a democratic society." United States v. Mississippi Valley Generating Co., 364 U.S. 520, 562, 81 S.Ct. 294, 315, 5 L.Ed.2d 268 (1961). That fabric remains interwoven by citizens' confidence in the competence and integrity of their representatives. In order to assure that integrity and concomitant public confidence, situations which create potential conflicts of interest, as well as actual misconduct, must be avoided. See Section 112.311, Florida Statutes (1975). It was in pursuit of this laudable objective that the Legislature enacted the statute in controversy. Nonetheless, because we find the statute to be fatally ambiguous, we concur in the decision of the District Court of Appeal, First District.
An assault on the constitutionality of a statute vel non must necessarily succeed if the language does not convey sufficiently definite warnings of the proscribed conduct when measured by common understanding and practice. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Newman v. Carson, 280 So.2d 426 (Fla. 1973); Zachary v. State, 269 So.2d 669 (Fla. 1972); Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972); Smith v. State, 237 So.2d 139 (Fla. 1970); Hunter v. Allen, 422 F.2d 1158 (5th Cir.1970). Due process of law will not tolerate a statute which "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning." Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); State v. Llopis, 257 So.2d 17 (Fla. 1971); Brock v. Hardie, 114 Fla. 670, 154 So. 690 (Fla. 1934).
Though easily enunciated, the vagueness test is often difficult to apply. The test is not an inflexible one. As Justice Frankfurter commented:
"There is no such thing as `indefiniteness' in the abstract, by which the sufficiency of the requirement expressed by the term may be ascertained. The requirement is fair notice that conduct may entail punishment. But whether notice is or is not `fair' depends upon the subject matter to which it relates....
That which may appear to be too vague and even meaningless as to one subject matter may be as definite as another subject matter of legislation permits... ." Winters v. New York, 333 U.S. 507, 524, 68 S.Ct. 665, 674, 92 L.Ed. 840 (1948).
What constitutes unconstitutional vagueness is itself vague. Thus, this Court has found the same or highly similar statutory language unconstitutionally vague when used in one particular statute, but sufficiently unambiguous when used in a different legislative act. In Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976), this Court upheld the constitutionality of Section 501.204, Florida Statutes (1975) (the Little FTC Act), which proscribed "unfair methods of competition and unfair or deceptive *167 acts or practices in the conduct of any trade or commerce."[1] We held that the potentially ambiguous language had acquired a sufficiently well-established meaning in trade usage, the common law, and federal trade law to meet the constitutional challenge of vagueness. To those members whose conduct was regulated by the Act, i.e., individuals who trade in the marketplace, the terms were imbued with particular meaning developed from usage in the trade. In addition, the statute itself expressly provided:
It is the intent of the legislature that in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended.
The federal courts had amassed an abundance of law construing the words under attack. That law provided this Court with additional guidance to meet a constitutional challenge of vagueness. Conversely, in Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968), this Court held in part that Sections 573.17(3)(b) and (c), Florida Statutes (1967),[2] which statutory sections employed language similar to that challenged in Rogers, supra, were invalid as an unconstitutional delegation of legislative power. The question arose in a suit filed by the appellant, as Commissioner of Agriculture of the State of Florida, to collect an assessment made against the appellee under the authority of Section 573.21(1), Florida Statutes, to pay the cost of administering a Sweet Corn Marketing Order promulgated by the Commissioner pursuant to Section 573.17(3). Appellee defended on the basis that Section 573.17(3), Florida Statutes, was unconstitutional on various grounds, one of which was that the act constituted an unlawful delegation of legislative power. In holding that the authorization of programs "for the prevention, modification or removal of trade barriers which obstruct the free flow of celery or sweet corn to market" [§ 573.17(3)(b), Fla. Stat.] was unconstitutional, we stated:
We are not directed to any decisions upholding such a delegation of authority; nor is it suggested what standards, either by common usage or by reference to the purposes of the Act, can be implied in limiting the Commissioner's authority in this respect. (Emphasis added)
In addition, the authorization to prohibit "unfair trade practices" [§ 573.17(3)(c), Fla. Stat.] was subject to the same infirmity. Relying on Robbins v. Webb's Cut Rate Drug Co., 153 Fla. 822, 16 So.2d 121 (1944), *168 a case considering whether a similar authorization respecting "unfair or unreasonable economic practices among barbers" was an unconstitutional delegation of legislative authority, the Joe Hatton Court quoted the following language from Robbins:
[These terms or phrases] have no set meaning in law or in common usage. To vest in a Commission the unbridled discretion to define such terms without any rule or standard whatever to guide them is a clear delegation to enact the law or define what it shall be; in other words, a delegation of straight legislative power which will not be permitted. Id. at 122.
Whether a particular statute is valid and falls closer to that end of the spectrum illustrated by the rationale of Rogers or is invalid and falls closer to that end exemplified by Joe Hatton is contingent on how well-defined the controversial language has become through common law, trade usage, or perhaps federal law (if the intent of the Legislature is to bestow precision to the statute through reference to federal law).
The case sub judice falls closer to the Joe Hatton end of the spectrum. Unlike Rogers, we find no meaningful precedent exuding from federal law which interprets the ambiguous language, nor does the statute expressly request that we attempt to do so. Additionally, the indefinite language in the statute does not employ technical words which have acquired a pellucid connotation to those specific individuals governed by the statute. Here, the reasonably prudent man test is utilized. The inherent vagueness in the statutory language cannot be sanitized by resort to signification acquired through custom in the trade as in Rogers.
While the "reasonably prudent person" language is not enriched with interpretive meaning, it has acquired a well settled common law import. Appellants suggest that decades of judicial construction should sustain the language against a charge of vagueness. We disagree. While the reasonably prudent man doctrine has been applied successfully by the courts, historically it has been employed to measure conduct. In the case sub judice, we are not measuring conduct. We are gauging a person's mental processes. However, the inquiry is not whether the official would be influenced in the discharge of his official duties, but whether a reasonably prudent official under like circumstances would be influenced. Conceptually, the reasonably prudent man test is an inapposite tool to determine whether a particular official would be influenced in the discharge of his duties by a gift. The statutory language denies appellee due process because the objective standard enunciated in the act is inapplicably related to the subjective mental process which the statute seeks to measure.
Appellants remind us that the statute in issue is non-criminal. Even though a less stringent examination as to vagueness is utilized in scrutinizing non-criminal statutes, a statute of this nature must nevertheless satisfy minimal constitutional standards for definiteness. Further, there are sanctions in the current Section 112.317, Florida Statutes (1975), which provide for such inexorable penalties as impeachment, suspension, removal from office, or a $5,000 civil fine. To the non-complying official, the penalties, though non-criminal, are nonetheless significant and substantial.
Appellants further suggest that any alleged vagueness in the statute is cured by Section 112.322(2)(a), Florida Statutes (1975).[3] That provision gives the insecure *169 official an opportunity to obtain an advisory opinion from the Ethics Commission. Our response is that this provision results in an unlawful delegation of legislative authority to the Commission. See Article II, Section I, Florida Constitution. The rule for the guidance of courts in determining the question of unlawful delegation of legislative power was stated in State v. Atlantic Coast Line Railway, 56 Fla. 617, 47 So. 969 (1908):
"The Legislature may not delegate the power to enact a law or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." Id. at 976.
More recently, the law was stated in Conner v. Joe Hatton, Inc., supra, that:
When the statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say what the law shall be. See [Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974),] State ex rel. Davis v. Fowler, 1927, 94 Fla. 752, 114 So. 435, 437; and Lewis v. Florida State Board of Health, Fla.App. 1962, 143 So.2d 867, 875. As stated in 1 Fla.Jur., Administrative Law, at page 243... . Id. at 211.
Under principles enunciated in Atlantic Coast Line Railway and Joe Hatton, supra, utilization of Section 112.322(2)(a), Florida Statutes (1975), to remedy statutory vagueness is unlawful. That provision palpably states that the advisory opinions are not restricted to the particular fact situation presented, but can be requested to establish standards of permissible conduct. In essence, the determination of what is lawful or prohibited conduct is delegated to the Ethics Commission. It is not proscribed by the Legislature nor is it delegated to the Ethics Commission accompanied by meaningful standards and guidelines for the Commission to follow.
As the Legislature cannot shift its constitutional duties to someone else, neither can we. Consequently, we must exercise our duty and find Section 112.313(2)(a), Florida Statutes (1975), unconstitutional for the reasons stated herein. At the same time, we are not critical of the Legislature in its attempt to establish and implement standards to govern the ethical conduct of public officials in accepting gifts and favors which might affect performance of their official duties.[4] Indeed, the people of this state have recognized the need for such ethical standards and have mandated the Legislature to act in this area by adopting the language of Article III, Section 18 of our Constitution.[5]
The decision and judgment of the District Court of Appeal, First District, is affirmed.
OVERTON, C.J., and BOYD, ENGLAND, HATCHETT and KARL, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] § 501.204, Fla. Stat. (1975), states:

(1) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2) It is the intent of the legislature that in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended.
[2] § 573.17(3)(b), Fla. Stat. (1967), stated:

Provisions for the establishment of plans and programs for advertising and sales promotion to maintain present markets or to create new or larger markets for celery or sweet corn grown in Florida, or for the prevention, modification or removal of trade barriers which obstruct the free flow of celery or sweet corn to market. The commissioner is hereby authorized to prepare, issue, administer and enforce plans and programs for promoting the sale of celery or sweet corn. Provided that any such plan or program shall be directed toward increasing the sale of celery or sweet corn without reference to a particular private brand or trade name.
§ 573.17(3)(c), Fla. Stat. (1967), stated:
Provisions relating to the prohibition of unfair trade practices. In addition to the unfair trade practices, now prohibited by law, applicable to the distribution or handling of celery or sweet corn within this state, the commissioner is hereby authorized to include in any marketing order issued hereunder provisions designed to correct any trade practice affecting the distributing or handling of celery or sweet corn within this state which the commissioner finds, after a hearing thereupon in which all interested persons are given an opportunity to be heard, is unfair and detrimental to the effectuation of the declared purposes of this act.
[3] § 112.322(2)(a), Fla. Stat. (1975), reads as follows:

Every public officer, candidate for public office, or public employee, when in doubt about the applicability and interpretation of this part to himself in a particular context, may submit in writing the facts of the situation to the Commission on Ethics with a request for an advisory opinion to establish the standard of public duty. Any public officer or employee who has the power to hire or terminate employees may likewise seek an advisory opinion from the commission as to the application of the provisions of this part to any such employee or applicant for employment. An advisory opinion shall be rendered by the commission, and all of said opinions shall be numbered, dated, and published without naming the person making the request, unless such person consents to the use of his name.
[4] "The best security for the fidelity of mankind is to make their interest coincide with their duty." The Federalist No. 23, at 437 (Mentor ed. 1961) (Alexander Hamilton).
[5] We commend to the consideration of the Legislature the code of ethics adopted by the Pennsylvania legislature. Specifically see Pa. Stat. Ann. Title 46, § 143.5(b) (1969). By prohibiting receipt of gifts or compensation which is either intended or which would influence the member's public performance, that general assembly avoided some of the vagueness which plagues statutes containing only the "which would" language, while making the section broader in scope than those statutes which only contain the intent element. That statute also adopts a subjective test of knowledge.

The language of Canon 5c of the Code of Judicial Conduct may also provide some guidance. While the proscribed conduct is similar to that under § 112.313(2)(a), Fla. Stat. (1975), the Canon is far more specific in defining that conduct.