ENGLAND, Judge,
dissenting.
I dissent both from the majority’s evaluation of the validity of this statute and its reading of the record in this case.
As to the statute, Section 871.01, Florida Statutes (1975), makes a criminal of anyone who “willfully interrupts or disturbs any school . . . .” A majority of my colleagues find this language sufficiently clear so that a man (here child) of common intelligence can know what is permissible conduct and what is not. I do not find that degree of clarity in the law. If elected public officials are not presumed to possess sufficient intelligence to understand that a violation of express statutory duties constitutes “malpractice in office”,[1] then I fail to understand how school children can be held criminally responsible for errors in their judgment as to what constitutes or does not constitute an interruption or disturbance in a school.
The two key words in the statute are “willfully” and “disturbs”. The majority attempts to provide a concrete standard of criminality which incorporates these terms by stating that a child is guilty of a criminal act if he or she does something which “significantly disturb[s]” a school and does so in “reckless disregard” of what the effect of the act might be. The majority offers no objective standard by which the term “disturb” may be measured, but leaves it to the idiosyncrasies of the persons claiming to have been “disturbed”.[2] Under the majority’s standard it is doubtful that any normal school child in this state is innocent of this crime. The clearest demonstration that this statute is overbroad and vague appears in the majority opinion itself, which states that
“the question of what conduct is forbidden must be determined largely on a case-by-case basis.
[[Image here]]
*1180 Since it is impossible to predict the type of behavior a person might use to cause a disruption, the statute cannot be more specific.”
As to the record before us, my reading of the transcript suggests that the school officials at Ribault Junior High School, not S.H.B., caused the disruption which allegedly occurred.[3] The assistant principal testified:
“A When this group of boys saw me coming — they was running through the hall and I yelled to them to stop. They kept moving and the teachers were coming to the door. The other students was looking.
Q So the activity that you’re describing was their being in the hall — moving through the hall?
A Yes.
Q Was the defendant himself saying anything?
A I wasn’t close enough to see.
Q How far away from him were you, sir?
A How far? I guess 15 feet — 20 feet.
Q 15 feet, and you didn’t hear the defendant say a word?
A Let me see if I understand you, sir. When I came through the hall — it’s my job to clear'the hall after the tardy bell.
Q I understand that.
A There was disturbance in the hall. There was noise whether it was [S.H.B.] or not — it was noise and I was sent to clear the hall.
Q Then it is your testimony that you don’t know if [S.H.B.] said anything or not when he was in the hall?
A The group was talking.
******
One further question. You stated on direct examination that the teachers and students came to the doors when you yelled for the defendant and the other members of the group to stop. Could the fact that they came to the doors or windows be related to your yelling down the hall as opposed to the defendant being in the hall?
No. No. <1
But you did yell down the hall? O*
When I got there, yes. <
Did the defendant yell back down the hall toward you? Q*
No.”
There may well be disciplinary problems in the public schools today. I am not persuaded, however, that the validation of a vague dragnet statute or the confirmation of an unsupported conviction are appropriate ways to solve them.

. State v. Wershow, 343 So.2d 605 (Fla.1977).

. Cf., D’Alemberte v. Anderson, 349 So.2d 164 (Fla.1977), where the Court held invalid a statute prohibiting conduct evaluated from the viewpoint of hypothetically reasonable men rather than the person charged with the crime.

. The record suggests that the trial judge was more concerned with the general problem of school discipline rather than the question of whether a violation of law occurred in this case. After S.H.B.’s counsel had made his closing argument, the court made these observations:
“THE COURT: [Counsel], you have made a very good presentation. What I’m going to say has no bearing on your presentation. It was well given, but if every child was allowed to do as he pleased in the halls as this young man did, we would have no school system, period. * * * If every student was allowed to roam the halls at will cursing the personnel, there would be absolutely no harmony. No nothing. The school system has a hard enough time at the moment and things like this just simply can’t go on.”