658 So.2d 1131 (1995)
Robert G. GOIN, Appellant,
v.
COMMISSION ON ETHICS, Appellee.
No. 94-3369.
District Court of Appeal of Florida, First District.
August 1, 1995.
*1132 Mark Herron and E. Gary Early of Akerman, Senterfitt & Eidson, P.A., Tallahassee, for appellant.
Philip C. Claypool, Gen. Counsel, Com'n on Ethics, Tallahassee, for appellee.
KAHN, Judge.
We have for review a final order and public report of the Florida Commission on Ethics (Commission). The Commission has determined that appellant Robert G. Goin, former Athletic Director of Florida State University (FSU), violated section 112.313(4), Florida Statutes (1993), and should pay a restitution penalty of $3,000 and a civil penalty of $1,000. In this appeal, Goin argues that section 112.313(4) is unconstitutionally vague. He also contends that, even if the statute is constitutional, the Commission erred by substituting its judgment for that of the hearing officer with respect to findings of fact erroneously labeled as conclusions of law. The latter argument is well-founded, and we must reverse.

I.
Goin initiated this matter on July 7, 1994, by filing with the Commission a petition for hearing pursuant to section 112.322(2), Florida Statutes (1993). Goin requested a hearing with respect to three classes of allegations that had been disseminated in the local and national media. This case concerns only the allegation that Goin received a free roof or a roof at a substantially discounted price from a subcontractor engaged in a major construction project at FSU. Pursuant to Rule 34-9.006(2), Florida Administrative Code, the Commission designated one of its members, Joel K. Gustafson, as the hearing officer to conduct a formal hearing. Gustafson ultimately issued a recommended order concluding that Goin did not violate any provisions *1133 of the Code of Ethics for Public Officers and Employees, chapter 112, part III, Florida Statutes (1993). The Commission accepted the findings of fact contained in the recommended order. Nonetheless, the Commission, on its own motion and over Goin's objection, rejected the hearing officer's conclusion that Goin's conduct did not violate section 112.313(4). In the recommended order issued by the hearing officer, this conclusion had been denominated a "conclusion of law." Having found a violation, the Commission recommended the President of FSU impose a restitution penalty and a civil penalty. See § 112.324(7)(b), Fla. Stat. (1993). The following facts are gleaned from the recommended order.
Goin worked for FSU for approximately 14 years, initially as Assistant Athletic Director, then as Associate Athletic Director, and, beginning in January 1990, as Athletic Director. As Athletic Director, Goin was responsible for overseeing FSU sports programs with a cumulative annual budget of more than $20 million. He also supervised and coordinated the activities of all Athletic Department personnel.
In 1990, the Board of Regents hired Culpepper Construction Company (Culpepper) to serve as construction manager of the FSU Academic/University Center Project, which the Board had added to the three-year Public Education Capital Outlay priority list in 1989. This project included the enhancement and addition of athletic spectator facilities, academic facilities, student service facilities, and administrative support facilities, at an estimated cost of $107 million. The project was repeatedly expanded to include additional construction. In April 1993, Culpepper let bids for roofing the Daisy Parker Flory addition to the Coyle E. Moore Athletic Center. Southeast Enterprise Group, Inc. (Southeast) submitted the low bid and earned the roofing contract award on July 21, 1993.
In late October or early November 1993, the roof of Goin's house began leaking. A now-retired roofer, who had originally reroofed the Goin house in 1982 for $3,000 plus the cost of replacing rotten wood, inspected the roof with another roofer. These two gave an estimate of approximately $8,000 to Goin's wife to remove and dispose of the old roof, construct a built-up roof, and replace the gutters and downspouts.
Goin then received an estimate from Culpepper's president and entered into an oral agreement to have the roof replaced at the price of $4,300 plus the cost of lumber. A building permit was obtained on November 12, 1993, and Southeast began working on the roof in early December 1993. Southeast subcontracted a portion of the work to Wenco, a metal-working company, and Wenco completed its portion in February 1994. In early February, Southeast completed the gravel portion of the roof. Job numbers 498 and 513 were Southeast's internal accounting numbers for its jobs on the University Center project. Labor and materials for the Goins' roof, as well as for two other residential roofing projects that Southeast did for free, were charged to these two numbers. Wenco continued working on portions of the roof through March 1994 because Mrs. Goin expressed dissatisfaction with the appearance of the chimney; this was additional work that was not originally specified.
On April 2, 1994, the Goins signed a contract to sell their home, which they had listed with a realtor on March 14, 1994; the closing date was set for May 31. Mrs. Goin's dissatisfaction with the work around the chimney continued until mid-May 1994.
On February 16, 1994, the re-roofing of the existing Coyle E. Moore fieldhouse was added to the list of Athletic Department projects to be funded as part of the stadium project; this roof was to be paid for out of the Athletic Department Special Reserve Fund (Fund). This Fund was created by the Seminole Boosters, Inc., after a study by Goin and Dr. James Pitts, for the purpose of paying for "facilities development." The Athletic Director controls the use of the Fund by initiating new construction or renovation projects. Southeast bid high on this re-roofing project, however, and evidently lost out on the contract. The fieldhouse job became part of a $2.5 million Athletic Department budget deficit that the Boosters advised Goin, in May 1994, they would cover.
*1134 On May 13, 1994, the state Comptroller's Office began an investigation of the circumstances surrounding the replacement of the Goins' roof. On May 16, 1994, the FSU Comptroller began to investigate. On May 23, 1994, Mrs. Goin called Southeast and said the roof had been completed. On May 24, 1994, Southeast billed Mrs. Goin $5,000 for the work done on the roof, and on June 1, 1994, Mrs. Goin issued a personal check for $5,000 to Southeast in payment for the roof. Mr. and Mrs. Goin signed the closing documents for the home on May 27, 1994, but the Goins did not move out of the house until June 20, 1994.

II.
Goin first challenges the constitutionality of section 112.313(4), Florida Statutes (1993), which provides:
UNAUTHORIZED COMPENSATION.  No public officer or employee of an agency or his spouse or minor child shall, at any time, accept any compensation, payment, or thing of value when such public officer or employee knows, or, with the exercise of reasonable care, should know, that it was given to influence a vote or other action in which the officer or employee was expected to participate in his official capacity.
Goin argues that this statute transgresses due process requirements because it is overly vague. The guarantees of due process found in both the Florida and federal constitutions give rise to a protection against vagueness in a statute. The often-cited standard for vagueness, a standard upon which both parties to this appeal agree, is whether the statute gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct. Cuda v. State, 639 So.2d 22 (Fla. 1994); Brown v. State, 629 So.2d 841 (Fla. 1994). A reviewing court must find a statute unconstitutionally vague if the statute fails to give adequate notice or the requisite definite warning of what conduct is prohibited. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); State v. Bussey, 463 So.2d 1141 (Fla. 1985).
Goin also asserts that section 112.313(4) is unconstitutional because it covers cases where the public official does not have actual knowledge that a gift was given to influence the official's vote or other official action. In such cases, the statute permits proof of a violation by evidence of constructive knowledge. Thus, says Goin, the public official must guess at and speculate about another person's intent. Citing State v. Wershow, 343 So.2d 605 (Fla. 1977), Goin argues that a person of common intelligence must not only speculate about the meaning of the statute, but must subject himself to punishment if he guesses wrong. Goin submits that because under section 112.313(4) a person of common understanding intelligence must act at his or her peril, the statute is unconstitutionally vague.
In D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977), the supreme court considered the language of section 112.313(2)(a), Florida Statutes (1975), which provided:
ACCEPTANCE OF GIFTS PROHIBITED.  No officer or employee of a state agency, or of a county, city, or other political subdivision of the state, or any legislator, or legislative employee shall accept any gift, favor, or service, of value to the recipient, that would cause a reasonably prudent person to be influenced in the discharge of his official duties.
The court determined that the statutory language imposing penalties for actions "that would cause a reasonably prudent person to be influenced in the discharge of his official duties" failed to meet minimal constitutional standards for definiteness. Id. at 168. While noting that a "less stringent examination as to vagueness is utilized in scrutinizing noncriminal statutes," the court nonetheless held that a public ethics statute which placed at stake the loss of livelihood and professional reputation, "though noncriminal," must meet at least minimal constitutional standards for definiteness. Id. The supreme court held:
Conceptually, the reasonably prudent man test is an inapposite tool to determine whether a particular official would be influenced in the discharge of his duties by a gift. The statutory language denies appellee due process because the objective standard enunciated in the Act is inapplicably *1135 related to the subjective mental process which the statute seeks to measure.
Id.
In Barker v. State of Florida, Commission on Ethics, 654 So.2d 646 (Fla. 3d DCA 1995), the court relied upon D'Alemberte and struck down the very statute we consider today. The Third District held:
[W]hen the Florida Legislature enacted the current section 112.313(4), it used language prohibiting receipt of gifts the official knows, or, "with the exercise of reasonable care, should know," were given to influence. We find that this language in effect equates to the "reasonably prudent person" language of the prior statute, and is thus too imprecise to provide public officials with fair warning of what conduct is forbidden.
654 So.2d at 648.
We respectfully disagree with this analysis. The D'Alemberte court nullified a statute that tested the public official's behavior against the standards of a "reasonably prudent man." We find that the present statute, including the language "with the exercise of reasonable care, should know," does not perpetrate the same evil. Instead, the present statute merely allows proof of an ethical violation by demonstrating the public employee's actual or constructive knowledge of the donor's illegal intent. Thus, the statute first requires proof that the donor did in fact have an intent to influence the public employee in a "vote or other action in which the officer or employee was expected to participate in his official capacity." Next, the "reasonable care" language of the statute places a specific duty upon the public employee to exercise such care before accepting a gift or anything else of value. The statute does not gauge the public employee's action against some hypothetical third person. Nor does it require a public employee to guess at whether certain conduct violates the ethics code. The statute fairly creates a zone of danger into which a public official or employee may not safely venture. It is left to the finder of fact to apply the statute to the specific conduct of the public employee in a given case and determine whether such conduct violates the statute. The focus, however, is upon the actual conduct of the charged public employee, and not upon the conduct of a hypothetical reasonable person.
Merely because the statute creates a zone of danger, it does not, in our view, run afoul of the constitution. The very nature of an ethics law requires those bound by its dictates to make reasoned discrimination between conduct that is right and conduct that is wrong. The statute allows a finding of violation upon demonstration of the public employee's constructive knowledge because, under such circumstances, the evil sought to be avoided by the statute would have occurred. Put otherwise, a public employee or official subject to the ethics code may not forge blindly ahead, oblivious to the legitimate public concerns raised by his or her actions.
At oral argument, counsel for Goin posited that if the statute were reworded to allow a finding of violation only upon proof of actual knowledge, no constitutional infirmity would attach. We believe, however, that excision of the "reasonable care" language would make little if any difference at all in the way these cases are prosecuted, nor would it make any difference in terms of the actions of the public employee that could lead to a finding of violation. This is true because, in the absence of a confession by the public employee, knowledge must be proven by circumstantial evidence. Consideration of the factual matters set out above certainly supports a conclusion that such was the case in the present matter.
Proof of knowledge or intent by circumstantial evidence is widely allowed, even in criminal cases. Bridges v. State, 144 So.2d 871 (Fla. 3d DCA 1962). In a drug possession prosecution, the government may prove the accused's knowledge of the presence of drugs and ability to maintain control over the premises by presenting evidence of actual knowledge or evidence of incriminating statements and circumstances from which the jury might lawfully infer the requisite knowledge to support conviction. Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967); Brown v. State, 412 So.2d 420 (Fla. 4th DCA 1982), approved, 428 So.2d 250 (Fla. 1983), *1136 cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d. 1391 (1983). In a civil damages action for injuries resulting from willful and unlawful sale of alcoholic beverages to a minor, proof of the inculpatory knowledge of age may be established by circumstantial evidence consisting of facts relating to the apparent age of a person. Willis v. Strickland, 436 So.2d 1011, 1012 (Fla. 5th DCA 1983), petition for review denied, 446 So.2d 99 (Fla. 1984). Although a criminal conspiracy conviction requires proof of both an agreement to accomplish a criminal offense and an intention to commit the offense, such proof may be by circumstantial evidence. Kocol v. State, 546 So.2d 1159 (Fla. 5th DCA 1989).
Moreover, the Florida Supreme Court has construed and upheld criminal statutes imposing penal sanctions upon proof of constructive knowledge. In State v. Tomas, 370 So.2d 1142 (Fla. 1979), the supreme court considered section 812.019, Florida Statutes, which provides:
Any person who traffics in, or endeavors to traffic in, property that he knows or should know was stolen shall be guilty of a felony of the second degree.
The supreme court upheld this statute against a charge of unconstitutional vagueness, despite the imposition of guilt upon one dealing in property he "should know was stolen." Id. at 1143; see also State v. Dickinson, 370 So.2d 762 (Fla. 1979).
In Edwards v. State, 381 So.2d 696 (Fla. 1980), the supreme court considered whether the following provision of section 812.022(2), Florida Statutes (1977), violated due process:
Proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.
The supreme court rejected the argument that the inference created by this statute violated due process. Id. at 697. "Since there is a rational connection between the fact proven (the defendant possessed stolen goods) and the fact presumed (the defendant knew the goods were stolen), the inference created by section 812.022(2) does not violate Edwards' due process rights." Id.
The statute here under review allows the state to demonstrate circumstances tending to show that a public official knew why he or she had been singled out as the object of the gift donor's generosity. To the extent an inference of guilt arises by the proof of such circumstances, nothing in the statute prevents the public official from demonstrating that in fact he did not know, nor with the exercise of reasonable care could he have known, of the donor's intent. The ultimate sorting out of the facts must be left to the hearing officer, just as it is left to a jury in criminal cases. While we acknowledge that proof of similar facts might give rise to a finding of violation in one case but not in another, such exactly replicates the everyday experience of our criminal courts. We see no reason why a public employee should be entitled to a greater degree of protection than a criminal defendant.
As the Commission observes, section 112.313(4) is similar to the stolen property statutes in that proof of their transgression, like that of many statutes requiring proof of an element of constructive guilty knowledge, is not dependent upon an express admission, but rather can be shown by adducing facts or a situation that would put a reasonable person on notice that certain conduct comes within a statutory prohibition. See State v. Graham, 238 So.2d 618, 620 (Fla. 1970) (to uphold a conviction for receiving stolen property, the evidence must show "that the circumstances of the transaction were sufficiently suspicious to put a person of ordinary intelligence and caution upon inquiry").
In Barker, the Third District reasoned that the phrase "should know" does not adequately define what is prohibited conduct because it requires the public official to determine the subjective intent of the donor. 654 So.2d at 648. We believe, however, that the statute merely places a duty upon the public official to avoid certain dealings and transactions. The lack of a bright line test does not compel a finding of unconstitutional vagueness. While, in the view of some, a bright line test is always desirable, the Legislature may well have decided that in the circumstance of a public official, the existence *1137 of a bright line test would tend to facilitate conduct that pushes the envelope of propriety and would serve to erode confidence in governmental officials and others in whom public trust is placed. We find merit in the argument advanced by the Commission on this point:
The statute here simply requires a responsible public servant to ask one question when offered anything of value: "Why is this person offering this to me?" If the answer is that it is being given because the donor has an interest in matters expected to come before the public servant and the donor would like to affect the public servant's judgment in those matters, then the statute prohibits its acceptance. There is nothing particularly difficult or obscure about determining the motivation of another, especially when, as here, one knows that the others are involved in building a multi-million dollar facility for which one has the authority to initiate change orders and arrange for funding. Nor is there any unfairness in expecting our public officials to ask themselves this single question and to exercise some insight into the motivations of others.
We hold, therefore, that section 112.313(4), Florida Statutes (1993), is not unconstitutionally vague and contains a fair test by which to gauge certain conduct of public officials and employees.

III.
We must now consider whether the Commission on Ethics, by finding Goin guilty of a section 112.313(4) violation, exceeded its lawful authority as a Florida agency subject to the Administrative Procedures Act, chapter 120, Florida Statutes.
Prior to the Commission's consideration of the recommended order, Goin filed exceptions to the hearing officer's characterization of certain paragraphs in the recommended order as conclusions of law. Specifically, Goin maintained that the following paragraphs, characterized by the hearing officer as conclusions of law, actually constitute findings of fact:
9. In November 1993, Petitioner received an offer to replace his roof for $4300 plus additional amounts for wood repairs... .
10. In November, Petitioner was aware that he had influence in the construction process as Athletic Director, although he also knew that he did not have the authority to decide these matters. He was involved in setting building priorities and deciding how those building projects would be funded: in September, October and November he participated in the Boosters' funding $1.1 million for Athletic Department projects, including stadium improvements. In November, he was also aware that the estimate for the roof he received from Knox, the president of the construction company serving as construction manager for the stadium center project, was approximately 40% lower than the initial quote he had received for doing the job. At that time, the Petitioner knew enough to conclude he might be getting a "deal"  that there was the potential that he might be receiving something of value  but there is not sufficient evidence to persuade me that, as a typical consumer in such a transaction, he knew or should have known that it was such a good deal that he must have been receiving a break on the price because of his public position. In other words, while there is sufficient evidence that he should have seen a yellow light, there was not enough evidence to conclude that he should have seen a red light in November.
11. On June 1, 1994 (when his wife wrote the check), Petitioner received a roof worth considerably more than what was being paid for it. At that time, however, Petitioner knew little more about the value of what he had received and the motives of those who had provided it than he knew in November.
(emphasis in original).
The Commission rejected Goin's exceptions, but acknowledged that portions of the challenged paragraphs contained findings of fact. Agreeing "with the hearing officer's findings of fact regarding the issue of whether Petitioner violated section 112.313(4)," the Commission, nonetheless, disagreed with the *1138 "conclusion of law" in paragraph 10, that Goin's conduct did not violate the statute. Purporting to utilize the facts as found by the hearing officer, the Commission concluded that "the Petitioner accepted a thing of value, a roof for his home at a substantially discounted price, when with the exercise of reasonable care he should have known that it was given to influence action in which he was expected to participate in his official capacity." Goin argues that this conclusion is nothing more than an impermissible rejection of a finding of fact.
Although the Commission on Ethics is an "independent commission" under the Florida Constitution, article II, sections 8(f) and 8(h)(3), it is subject to and must comply with the provisions of chapter 120, Florida Statutes. State, Comm'n on Ethics v. Sullivan, 449 So.2d 315, 316-17 (Fla. 1st DCA), petition for review denied, 458 So.2d 271 (Fla. 1984). Under chapter 120, an agency may reject or modify a hearing officer's conclusions of law and interpretation of administrative rules, but it may not reject or modify a finding of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the particular finding of fact was not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. § 120.57(1)(b)10, Fla. Stat. (1993). "An agency cannot circumvent the requirements of the statute by characterizing findings of fact as legal conclusions." Department of Labor & Employ. Sec. v. Little, 588 So.2d 281, 282 (Fla. 1st DCA 1991). "Erroneously labeling what is essentially a factual determination a `conclusion of law,' whether by the hearing officer or the agency does not make it so, and the obligation of the agency to honor the hearing officer's findings of fact may not be avoided by categorizing a contrary finding as a `conclusion of law.'" Kinney v. Department of State, Div. of Licensing, 501 So.2d 129, 132 (Fla. 5th DCA 1987). See also Harry's Restaurant & Lounge, Inc. v. Department of Bus. Reg., 456 So.2d 1286, 1288 (Fla. 1st DCA 1984) ("Although labeled a `Conclusion of Law' the Division's finding that appellant failed to operate primarily as a bona fide restaurant is, in reality, a finding of fact. As such, it is an improper rejection of the hearing officer's findings of fact since the hearing officer's finding is supported by the record." (footnote omitted)).
In this case, the hearing officer stated, in paragraph 10 of the recommended order, that he was not persuaded Goin knew or should have known the roof was "such a good deal" that he must have been receiving a discount on the price because of his position at FSU. If the failure of the evidence to persuade the hearing officer of Goin's guilt is tantamount to a finding of fact, then the Commission's final order rejecting that finding may not stand.
By stating he was not persuaded, the hearing officer engaged in the act of ascribing weight to the evidence. Florida's Administrative Procedures Act relies upon a hearing officer "to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence." Heifetz v. Department of Bus. Reg., 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). An agency, however, may not "weigh the evidence presented ... or otherwise interpret the evidence to fit its desired ultimate conclusion." Id. In somewhat different circumstances, a hearing officer's finding that "the evidence was insufficient to show criminal intent was a finding of fact, not a conclusion of law." Kinney, 501 So.2d at 132. As this court has recently held, the question of whether the facts, as found in the recommended order, constitute a violation of a rule or statute, is a question of ultimate fact which the agency may not reject without adequate explanation. Langston v. Jamerson, 653 So.2d 489 (Fla. 1st DCA 1995).
Applying the case law, we must hold that paragraph 10 is a finding of fact. Accordingly, the Commission erred by substituting its judgment for that of the hearing officer on this matter. No one could argue that the circumstances of this case are not strong as regards the question of whether Goin knew or should have known why he was receiving a new roof at a price substantially lower than *1139 he had been previously quoted. Nevertheless, the hearing officer was not persuaded of Goin's actual or constructive knowledge, and the Commission was bound by law to leave the determination of Goin's intent to the factfinder.
We REVERSE the order of the Commission on Ethics. The parties are in agreement that certain technical deficiencies, not addressed in this opinion, will be corrected on remand.
BARFIELD and DAVIS, JJ., concur.