# Third District Court of Appeal

### State of Florida

Opinion filed July 29, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 14-2654
Lower Tribunal No. 13-28720
_____

**South Florida Racing Association,**
Appellant,

vs.

**State of Florida, Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering,**
Appellee.


An Appeal from the State of Florida, Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering.

Lavin Law Group, P.A., and Andrew T. Lavin (Ft. Lauderdale), for appellant.

Department of Business and Professional Regulation, William N. Spicola, General Counsel, and Garnett Chisenhall, Chief Appellate Counsel, for appellee.


Before SUAREZ, ROTHENBERG, and EMAS, JJ.

ROTHENBERG, J.

South Florida Racing Association ("SFRA") appeals from a final order of the State of Florida, Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering ("the Division") denying SFRA's application for a summer jai alai permit pursuant to section 550.0745(1) of the Florida Statutes (2013). In its final order, the Division interpreted the phrase "smallest play or total pool within the county" in section 550.0745(1) to include only those wagers physically placed within Miami-Dade County, and it denied SFRA's application for a summer jai alai permit solely on that basis. Because we agree with SFRA that the Division's interpretation of section 550.0745(1) was clearly erroneous, we reverse.

## FACTUAL BACKGROUND

Pari-mutuel wagering is "a system of betting on races or games in which the winners divide the total amount bet, after deducting management expenses and taxes, in proportion to the sums they have wagered individually and with regard to the odds assigned to particular outcomes." § 550.002, Fla. Stat. (2013). The Division is the state agency responsible for regulating all pari-mutuel wagering in Florida. See § 550.0251(3), Fla. Stat. (2013) ("The division shall adopt reasonable rules for the control, supervision, and direction of all applicants, permittees, and licensees and for the holding, conducting, and operating of all racetracks, race meets, and races held in this state. Such rules must be uniform in their application

2

and effect, and the duty of exercising this control and power is made mandatory upon the division.").  SFRA is a pari-mutuel permittee that hosts quarter horse races and various other gambling contests at Hialeah Park in Miami-Dade County. As a pari-mutuel permittee, SFRA is subject to the Division's rules and decisions.

On July 1, 2013, SFRA sent a letter informing the Division that it had the smallest total pari-mutuel pool for the two immediate-prior fiscal years (2011/2012 and 2012/2013) and thus had the right to convert its quarter horse racing permit to a summer jai alai permit pursuant to section 550.0745(1), Florida Statutes (2013), which provides, in relevant part:

> The owner or operator of a pari-mutuel permit who is authorized by the division to conduct pari-mutuel pools on exhibition sports in any county having five or more such pari-mutuel permits and whose mutuel play from the operation of such pari-mutuel pools for the 2 consecutive years next prior to filing an application under this section has had the **smallest play or total pool within the county** may apply to the division to convert its permit to a permit to conduct a summer jai alai fronton in such county during the summer season commencing on May 1 and ending on November 30 of each year on such dates as may be selected by such permittee for the same number of days and performances as are allowed and granted to winter jai alai frontons within such county.  If a permittee who is eligible under this section to convert a permit declines to convert, a new permit is hereby made available in that permittee's county to conduct summer jai alai games as provided by this section, notwithstanding mileage and permit ratification requirements.

(emphasis added).  In the letter, SFRA also informed the Division that it wished to decline its option to convert its pari-mutuel permit to a summer jai alai permit— thereby generating a new summer jai alai permit in Miami-Dade County as

3

permitted in the final sentence of the quoted language—and to simultaneously apply for the newly available permit it had just created.[1] These elections would have allowed SFRA to keep its standard pari-mutuel permit and also apply for a summer jai alai permit.

In its response letter dated July 17, 2013, the Division acknowledged that SFRA had the smallest total pari-mutuel gambling pool within Miami-Dade County for the 2011/2012 fiscal year, but it maintained that a different pari-mutuel gambling establishment, West Flagler Associates, Ltd. ("West Flagler"), had the smallest total pool within the county for the 2012/2013 fiscal year. The Division thus informed SFRA that it did not believe a summer jai alai permit was available, and it denied SFRA's application on that basis.

The disagreement between the parties over which pari-mutuel establishment had the smallest total pool for the 2012/2013 fiscal year stems solely from their disparate methods of interpreting and calculating the "smallest play or total pool within the county" as specified in section 550.0745(1). Pari-mutuel gambling establishments take wagers from customers who are physically in attendance at the pari-mutuel establishment hosting the event, which bets are typically called "live on-track wagers," and pari-mutuel gambling establishments also take bets remotely from patrons who are not at the track but instead place their wagers at another track

---

[1] We do not comment on the propriety of this request because the issue was not raised.

4

or online, which bets are called "intertrack wagers."[2]  For such intertrack wagers, the facility hosting the live event is called the "host track," § 550.002(16), while the facility taking a wager on that event from a remote location is called the "guest track," § 550.002(12).  When an intertrack wager is placed, the host track receives the vast majority of the proceeds from the wagers, while the guest track receives a small percentage of the same.  See § 550.6305, Fla. Stat. (2013) (specifying what percentage of the proceeds should go to guest and host tracks for various pari-mutuel events).  For purposes of calculating the "smallest play or total pool within the county," the Division counted only those wagers placed physically at a pari-mutuel establishment located within Miami-Dade County—only the "live on-track wagers" placed at SFRA and any intertrack wagers that were physically placed at a guest track within Miami-Dade County—while SFRA additionally counted intertrack wagers placed elsewhere in the state.

SFRA collected a pool of $1,244,845 in live on-track wagers and $218,998 in intertrack wagers, for a total collection of $1,463,843 for the 2012/2013 fiscal year, while West Flagler collected $893,173 in live on-track wagers and

---

[2] The term "intertrack wager" is statutorily defined and "means a particular form of pari-mutuel wagering in which wagers are accepted at a permitted, in-state track, fronton, or pari-mutuel facility on a race or game transmitted from and performed live at, or simulcast signal rebroadcast from, another in-state pari-mutuel facility." § 550.002(17), Fla. Stat. (2013).  When such broadcasts are made to or from facilities in a different state, it is called "simulcasting."  § 550.002(32), Fla. Stat. (2013).

$1,047,328 in intertrack wagers, for a total collection of $1,940,501, as illustrated below. [3]

|  | Live On-track Wagers | Intertrack Wagers | All Wagers |
|---|---|---|---|
| SFRA | $1,244,845 | $218,998 | $1,463,843 |
| West Flagler | $893,173 | $1,047,328 | $1,940,501 |

The parties stipulated to these amounts and also stipulated that all intertrack wagers were placed at guest tracks located outside Miami-Dade County. Thus, the parties agree that if the "total pool within the county" includes both live on-track wagers and intertrack wagers wherever they are placed, then SFRA had the smallest total pool for two consecutive years, and another summer jai alai permit should be issued. However, if the "total pool within the county" includes only those wagers that were physically placed in Miami-Dade County (either live on-track wagers only or live on-track wagers plus intertrack wagers placed at guest tracks within the county), then West Flagler had the lowest total pool, and no permit is available. In short, the parties agree that the interpretation of the clause "smallest play or total pool within the county" in section 550.0745(1) is dispositive.

After receiving the denial letter from the Division, SFRA filed a Petition for

_____

[3] It is unclear in the record whether the total amount specified includes proceeds derived by the establishments as guest track and host track, but we assume that it does.

6

Formal Administrative Proceedings that challenged the denial of its application; however, because they stipulated to all the relevant facts, the parties later agreed to treat the proceeding as an informal administrative proceeding under section 120.57(4) of the Florida Statutes (2013). After a hearing, an officer from the Division entered a written recommendation that SFRA's application be denied by expressly interpreting section 550.0745(1) such that the "smallest play or total pool within the county" calculation included only those bets physically placed in the county (i.e., live on-track wagers and intertrack wagers that were placed from other tracks in Miami-Dade County) but **not** intertrack wagers placed from a facility outside of Miami-Dade County. The Division adopted that recommendation in a final order and officially denied SFRA's application on October 7, 2014. SFRA timely filed this appeal.

## ANALYSIS

We start by recognizing the great deference appellate courts typically afford an agency's interpretation of its own statute. "[T]he interpretation of a statute by the administrative agency or body 'charged with its enforcement is entitled to great deference and should not be overturned unless clearly erroneous or in conflict with the legislative intent of the statute.'" Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146, 1153 (Fla. 2000) (quoting Mayo Clinic Jacksonville v. Dep't of Prof'l Regulation, 625 So. 2d 918, 919 (Fla. 1st DCA 1993)). "However, 'a court need

7

not defer to an agency's construction or application of a statute if special agency expertise is not required, or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute.'" <u>Summer Jai Alai Partners v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering</u>, 125 So. 3d 304, 307 (Fla. 3d DCA 2013) (quoting <u>Fla. Hosp. v. Agency for Health Care Admin.</u>, 823 So. 2d 844, 848 (Fla. 1st DCA 2002)). "[T]he Division is the state agency that is responsible for regulating pari-mutuel wagering in Florida," <u>id.</u> at 307 (citing § 550.0251, Fla. Stat. (2012)), so we examine its interpretation of the subject statute to determine whether it is clear error, conflicts with the legislative intent of the statute, or contradicts the plain and ordinary meaning of the statute. We believe the Division's interpretation of "the smallest play or total pool within the county" is infirm in all three ways.

The disputed sentence in the statutory language is:

> The owner or operator of a pari-mutuel permit who is authorized by the division to conduct pari-mutuel pools on exhibition sports in any county having five or more such pari-mutuel permits and whose mutuel play from the operation of such pari-mutuel pools for the 2 consecutive years next prior to filing an application under this section has had the smallest play or total pool within the county may apply to the division to convert its permit to a permit to conduct a summer jai alai fronton in such county during the summer season commencing on May 1 and ending on November 30 of each year on such dates as may be selected by such permittee for the same number of days and performances as are allowed and granted to winter jai alai frontons within such county.

§ 550.0745(1). After pruning out the dependent clauses and the language that is

8

irrelevant to this case, we are left with: "The owner or operator of a pari-mutuel permit . . . whose mutuel play . . . has had the smallest play or total pool within the county may apply to the division to convert its [pari-mutuel] permit to a permit to conduct a summer jai alai fronton in such county . . . ." Id. The plain and natural meaning of this simplified sentence is clear: The owner or operator of a pari-mutuel permit whose mutuel play has the smallest play or total pool as compared to the other pari-mutuel permittees within that same county may apply to convert its permit. The phrase "within the county" simply defines the universe of pari-mutuel permittees with which to compare the applicant's total pool; it does not limit the calculation of that applicant's "total pool" to those bets physically within the county. It takes a very strained reading to contort the statutory language into the Division's adopted interpretation. Moreover, the term "total pool" seems to refer to all monies wagered. Although "total pool" is not statutorily defined, the term "pari-mutuel wagering pool" is defined to mean "the total amount wagered on a race or game for a single possible result." § 550.002(24). Nothing in Chapter 550 of the Florida Statutes limits the total pool to solely physical in-county wagers. Thus, we conclude that the Division's interpretation conflicts with the plain meaning of section 550.0745(1).

Even if we found the disputed language to be ambiguous, which we do not, the Division's adopted interpretation of the statute is clearly erroneous based on

the legislative history of section 550.0745. An agency's interpretation of a statute is clear error if it is unreasonable. See Fla. Dep't of Educ. v. Cooper, 858 So. 2d 394, 396 (Fla. 1st DCA 2003) ("If the agency's interpretation is within the range of possible and **reasonable** interpretations, it is not clearly erroneous and should be affirmed." (emphasis added)). Every clue indicating the Florida Legislature's intended meaning when adopting the statute weighs against the interpretation adopted by the Division.

First, as noted above, the phrases "total pool" and "pari-mutuel wagering pool" are used throughout Chapter 550, the pari-mutuel wagering chapter of the Florida Statutes, to discuss the full amount wagered on a particular type of event. Not once in chapter 550 is a distinction made between wagers physically placed within the county and wagers placed remotely as an intertrack wager for purposes of calculating the "total pool." It is therefore unreasonable to construe this subsection of the statute as placing a limitation on the calculation of the total pool.

More tellingly, the legislative history of section 550.0745 provides compelling proof that the Legislature did not intend the disputed language to restrict the "total pool" calculation to only those wagers physically placed within the county. Section 550.0745 was passed as it is currently written during a special legislative session in 1992, during which the Florida Legislature renumbered a large portion of the pari-mutuel statutes and passed several additional provisions

10

related to the regulation of pari-mutuel wagering in the state. <u>See generally</u> Ch. 92-348, § 14, at 31-32, Laws of Fla. Prior to this 1992 renumbering, however, the statute that is now section 550.0745 existed in substantively identical fashion as section 550.074. In enacting section 550.074, the Florida Legislature specifically found:

> WHEREAS, it is the finding of the Legislature that the operation by permittees of legalized pari-mutuel betting has become a substantial business compatible with the best interests of the state, and
>
> WHEREAS, it is the further finding of the Legislature that the operations of such permittees do attract a large tourist business to the state and do afford entertainment to such tourists, and
>
> WHEREAS, it is the further finding of the Legislature of the state that in counties where there are five or more permittees engaged in the operation of pari-mutuel pools, as provided by law, on exhibition sports, this state fails to get the full benefit of such attractions in encouraging the tourist trade, for there is a lack of jai alai entertainment on which pari-mutuel betting is permitted during the summer tourist season, and it would be to the best interests of the state to permit summer jai alai so long as there is no increase in the number of permittees authorized to operate within any specified county, and
>
> WHEREAS, it is the further finding of the Legislature that **the Division of Pari-mutuel Wagering should be empowered to receive and to grant the application of a permittee in such county whose pari-mutuel play for 2 consecutive years next prior to such application has had the smallest mutuel play of any pari-mutuel permittee within said county to conduct without further elections a jai alai fronton during the summer season** as herein fixed and determined at a location within such county during the summer tourist season commencing May 1 and ending on November 30 of each year, and that **this may greatly enhance the tax revenue derived by the state and counties and will not endanger the general welfare of the public**, and
>
> WHEREAS, it is the further finding of the Legislature that in those counties in which harness horse racing has not provided a major

source of local entertainment, has added little to tourism, has failed to generate local interest, and has provided a relatively small amount of pari-mutuel tax revenue; **the permitholder and the state would probably gain in revenues if such harness horse racing permit were converted into a permit to conduct dog racing**, NOW THEREFORE,

Be It Enacted by the Legislature of the State of Florida:

Section 1. (1) The owners or operators of pari-mutuel permits which are authorized by the Division of Pari-mutuel Wagering of the Department of Business Regulation to conduct pari-mutuel pools on exhibition sports in any county having five or more such pari-mutuel permits, **whose mutuel play from the operation of such pari-mutuel pools for the 2 consecutive years next prior to filing an application under this section, has had the smallest play or total pool within the county**, may apply to the Division to convert its permit to a permit to conduct a summer jai alai fronton in such county during the summer season commencing on May 1 and ending on November 30 of each year on such dates as may be selected by such permittee for the same number of days and performances as are allowed and granted to winter jai alai frontons within such county; providing that if a permittee who is eligible under this section to convert a permit declines to convert, then a new permit is hereby made available in that permittee's county to conduct summer jai alai games as provided by this section, notwithstanding mileage and permit ratification requirements and providing that in the event that a permittee converts a quarterhorse permit pursuant to this section, nothing herein shall prohibit the permittee from obtaining another quarterhorse permit; however, no permit which is converted to a jai alai permit may be authorized to conduct afternoon or matinee performances unless the permit, as it existed prior to the conversion, had conducted afternoon or matinee performances prior to the conversion of the permit. Such permittee shall pay the same taxes as are fixed and required to be paid from the pari-mutuel pools of winter jai alai permittees and shall be bound by all of the regulations and provisions of chapters 550 and 551, Florida Statutes, which are applicable to the operation of winter jai alai frontons. Such permittee shall only be permitted to operate a jai alai fronton after its application has been submitted to the division and its license has been issued pursuant to the application. The license shall be renewable from year to year as provided by law.

Ch. 80-88, § 4, at 283-84 Laws of Fla. (emphasis added).

Clearly, the language in the enacted 1980 statute is substantially identical to the language of the current version of section 550.0745, and thus, if ambiguous, "smallest play or total pool within the county" was just as ambiguous in 1980. However, the "whereas clause" preceding the enactment clarifies in transparent fashion that "within the county" is in reference to the pari-mutuel permittees in the county, not the wagers or pools within the county. The Legislature stated in the fourth whereas clause, in relevant part: "the Division of Pari-mutuel Wagering should be empowered to receive and to grant the application of a permittee in such county whose pari-mutuel play for 2 consecutive years next prior to such application has had **the smallest mutuel play of any pari-mutuel permittee within said county** to conduct without further elections a jai alai fronton during the summer season . . . ." Ch. 80-88, §4 at 283, Laws of Fla. (emphasis added). Based on this language, it is clear that the Florida Legislature did not intend the statute to limit the total pool calculation to physical in-county betting. It meant to limit the universe of pari-mutuel permittees with which to compare the summer jai alai applicant.

Additionally, from a more practical standpoint, the technology for remote or intertrack bidding did not exist in 1980 when the above statute was passed with the exact same currently disputed language. Therefore, the Florida Legislature in 1980

could not possibly have intended to exclude intertrack wagers by that language because it was not aware that intertrack wagers would exist, and, although the statute has been amended since 1980, the language has not changed.

Lastly, the whereas clauses in the 1980 enactment evince a legislative intent to allow a struggling entity to remain in business during the summer, thereby increasing tax revenues and tourism. The Florida Supreme Court has agreed that the legislative intent behind chapter 550 is largely to generate tax revenue. See Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So. 2d 879, 882 (Fla. 1983) (explaining that the purpose of section 550.078, Fla. Stat. (1981), which allowed a permittee to convert its permit for harness racing to a permit for dog racing, was to allow an ailing enterprise with the least tax revenue to convert to a more lucrative form of business, thereby generating tax revenue for the state); Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, 245 So. 2d 625, 629 (Fla. 1971) ("Unquestionably, state revenue is one of the prime factors for permission of pari-mutuel wagering in this state . . . ."). This intent is fostered best by allowing the pari-mutuel permittee that is struggling the most to convert its permit to a more lucrative form of business; it matters not whether the income is from in-county or out-of-county.

Thus, the Division's interpretation of section 550.0745(1) limiting the "total pool within the county" to wagers placed physically within that county is clearly

14

erroneous and deviates from the common meaning of the statute. Because SFRA had "the smallest play or total pool within the county" for the two years immediately prior to its application, the Division erred by denying SFRA's application on that basis.

Reversed.