# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5096
_____

KANTER REAL ESTATE, LLC,

    Appellant,

    v.

DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
CITY OF MIRAMAR, and BROWARD
COUNTY, FLORIDA,

    Appellees.

_____

On appeal from the State of Florida Department of Environmental
Protection.
Noah Valenstein, Secretary.

March 19, 2019

OPINION ON MOTION FOR REHEARING, REHEARING EN BANC, AND
TO CERTIFY A QUESTION OF GREAT PUBLIC IMPORTANCE

B.L. THOMAS, C.J.

We deny Appellees' motions for rehearing, rehearing en banc,
and to certify a question of great public importance. To clarify our
holding regarding our standard of review of the agency's
conclusions of law, we withdraw our prior opinion and substitute
the following in its place.

Appellant, Kanter Real Estate, LLC, challenges a Final Order
of the Department of Environmental Protection denying a permit

to drill an exploratory oil well, which complied with all environmental-protection requirements, in an "environmentally degraded" property located in the Florida Everglades. This Court has jurisdiction. Fla. R. App. P. 9.030(b)(1)(C). For the reasons set forth below, we reverse the Final Order and remand for entry of an order consistent with the Administrative Law Judge's Recommended Order, and we direct the Department to issue the requested oil and gas permit.

Appellant owns in fee simple the surface rights and subsurface mineral rights of a 20,000-acre parcel of land located in Broward County. The property, which is located in Water Conservation Area 3 of the Florida Everglades, is encumbered by a flowage easement held by the South Florida Water Management District. The easement reserved rights of ingress and egress to the grantor, including access "for the exploration or drilling for, or the developing, producing, storing or removing of oil . . . in accordance with sound engineering principles."

In 2015, Appellant applied to construct and drill an exploratory oil well on five acres of the property. The Department granted Appellant an Environmental Resource Permit that defined and approved the design of a stormwater management system at the site to protect offsite lands from any stormwater discharges. Appellant also committed to a number of pollution prevention measures, including spill prevention and cleaning plans, a hydrogen sulfide plan, a construction pollution prevention plan, proposals for wildlife management, and a safety manual.

The Department sent Appellant three requests for information about issues such as the aquifer, the project site design, and protections for the surrounding area. After responding, Appellant demanded that the Department process the oil and gas permit application. The Department issued a Notice of Denial, stating that Appellant failed to provide information showing a balance of considerations in favor of issuance under section 377.241, Florida Statutes. Section 377.241 sets forth the following relevant criteria for the Department to consider when deciding whether to issue an oil and gas permit:

(1) The nature, character and location of the lands involved; whether rural, such as farms, groves, or

2

ranches, or urban property vacant or presently developed for residential or business purposes or are in such a location or of such a nature as to make such improvements and developments a probability in the near future.

(2) The nature, type and extent of ownership of the applicant, including such matters as the length of time the applicant has owned the rights claimed without having performed any of the exploratory operations so granted or authorized.

(3) The proven or indicated likelihood of the presence of oil, gas or related minerals in such quantities as to warrant the exploration and extraction of such products on a commercially profitable basis.

§ 377.241, Fla. Stat. (2018).

To challenge the Department's decision, Appellant filed a petition for an administrative hearing, which was referred to the Division of Administrative Hearings. The parties stipulated that Appellant's application met the minimum design standards for a permit and did not violate statutory setback requirements. Thus, the only issue for the Administrative Law Judge (ALJ) to determine was whether the statutory criteria of section 377.241 weighed in favor of or against issuance of an oil and gas permit.

Appellant presented evidence that the project site lies in an area called "the pocket," notable for its degraded natural habitat and lessened environmental values. Appellant also presented the environmental resource permit that was granted by the Department in acknowledgment of Appellant satisfying all necessary environmental precautions. Appellant also introduced evidence that the Department had allowed other oil wells in the Everglades, including one approximately twenty-four miles west of Appellant's project site that began operation in the late 1970s.

Appellant's expert testified that there was a 23% chance of discovering oil at the project site, and that in the oil exploration industry, a 23% chance of discovering oil constitutes a very good prospect. The expert further testified that Appellant's well would

be commercially self-supporting at $50 per barrel of oil if only 100,000 barrels were discovered, and opined that the proposed well would generate between 180,000 to 10,000,000 barrels of oil if oil were discovered.

The ALJ concluded that the first statutory factor, the nature of the lands involved, did not weigh against issuance, as the factor was intended to address and balance the interests of subsurface mineral rights owners against any competing interests of surface owners, and that "[g]iven the unified title to the Well Site in Kanter, balancing of the interests of the fee simple owner against the interests of the mineral rights lessee is neither necessary nor appropriate." The ALJ cited a series of Whereas clauses to illustrate the legislature's concern over divided ownership interests. In addition, the ALJ found that even if the first factor was relevant in the absence of divided ownership interests, "[t]he property upon which the Well Site is to be located has no special characteristics that would make it susceptible to pollution."

The ALJ then concluded that the second statutory factor, the nature of ownership, including the length of time in which Appellant delayed exercising oil rights, did not weigh against issuance in this case, as Appellant owned both surface and mineral rights. As to the third factor, the likelihood of discovering oil on a profitable basis, the ALJ found there was a strong chance (17%) of Appellant discovering oil, meaning the third factor weighed in favor of issuance. Balancing the three factors, the ALJ recommended granting Appellant's permit request.

The Department filed twelve exceptions to the ALJ's Recommended Order, stating that there was no competent, substantial evidence to support the likelihood of discovering oil in sufficient quantities to be profitable, and that Appellant's delay in applying for a permit should have been considered.* The Secretary entered a Final Order denying Appellant's request for an oil and gas permit.

---

* Broward County also filed exceptions to the Recommended Order, but the county's exceptions were untimely filed and the merits of the exceptions were not considered by the Department.

4

As to the nature of the land, the Final Order states that section 377.241, Florida Statutes, requires an evaluation of the lands themselves, rather than a risk analysis of possible discharge, concluding:

> The lands proposed for the Well Site are located in the endangered Everglades ecosystem, which is world renowned for its unique environmental characteristics. In accordance with the Everglades Forever Act, the Florida Legislature has dedicated the Everglades to long term restoration.

As to the second statutory factor, the Secretary reversed the ALJ's conclusions, declaring that Appellant's delay in seeking a permit was relevant to the balancing test and weighed against issuance. As to the third statutory factor, the Secretary accepted the ALJ's determination that there was a reasonable likelihood of discovering oil in commercially profitable quantities. The Secretary then concluded that, "using the same criteria in Section 377.241, Florida Statutes, the balance tips against issuance of an oil and gas permit to drill an exploratory well in the environmentally sensitive Everglades." The Secretary compared the facts to a case in which the statutory balancing test weighed against issuing a permit to drill in an environmentally sensitive location. *See Coastal Petroleum Co. v. Florida Wildlife Fed'n, Inc.*, 766 So. 2d 226, 228 (Fla. 1st DCA 1999).

The Final Order discussed the Department's history of denying oil and gas permits in the Everglades, declaring:

> [The Department] has not issued an oil and gas exploration permit since 1967 within the Everglades lands subject to conservation and restoration under § 373.4592, Florida Statutes. Thus, the last oil and gas exploration permit within such lands was 50 years ago, well before Section 373.4592 known as the Everglades Forever Act, was enacted by the Florida Legislature in 1991. The Florida Legislature has not amended its position regarding the need to preserve and restore the Everglades since 1991, nor has [the Department] issued an oil and gas exploration permit within this boundary of

5

the Everglades once such lands became subject to restoration under the Everglades Forever Act.

(Internal citations omitted). The Secretary stated in a footnote that "this specific information did not form the basis of the agency's decision, but merely reflects that DEP has not changed its long-standing policy to deny oil and gas permits within lands subject to Everglades restoration."

*Analysis*

Section 120.57(1)(*l*), Florida Statutes, authorizes an agency to reject or modify an ALJ's conclusions of law and interpretations of administrative rules. *Barfield v. Dep't of Health*, 805 So. 2d 1008, 1010 (Fla. 1st DCA 2001). Before the recent passing of Amendment Six to the Florida Constitution, this Court afforded considerable deference to agency interpretations of statutes and rules, affirming such interpretations unless clearly erroneous. *E.g.*, *Falk v. Beard*, 614 So. 2d 1086, 1089 (Fla. 1993); *Addison v. Agency to Persons with Disabilities*, 113 So. 3d 1053, 1056 (Fla. 1st DCA 2013). Amendment Six declares that appellate courts may no longer defer to an agency's statutory interpretation, and must instead apply a *de novo* review. Amend. VI, Art. V, § 21, Fla. Const.

For factual findings, "[a]n agency must accept the administrative law judge's factual findings unless they are not supported by competent substantial evidence." *Stinson v. Winn*, 938 So. 2d 554, 555 (Fla. 1st DCA 2006); *see also* § 120.57(1)(*l*), Fla. Stat. (declaring that an agency may not reject or modify an ALJ's findings of fact "unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law"). In fact, "[i]f the ALJ's findings of fact are supported by competent, substantial evidence, the agency cannot reject them even to make alternate findings that are also supported by competent, substantial evidence." *Lantz v. Smith*, 106 So. 3d 518, 521 (Fla. 1st DCA 2013). Likewise, an agency may not "reject a finding that is substantially one of fact simply by treating it as a legal conclusion." *Abrams v. Seminole Cty. Sch. Bd.*, 73 So. 3d 285, 294 (Fla. 5th DCA 2011).

6

Moreover, an agency is not permitted to consider evidence outside the record when reviewing exceptions to a recommended order. *Walker v. Bd. of Prof'l Engineers*, 946 So. 2d 604, 605 (Fla. 1st DCA 2006). In addition, an agency "may not base agency action that determines the substantial interests of a party on an unadopted rule . . . ." § 120.57(1)(e)1., Fla. Stat. (2018). This "does not preclude application of valid adopted rules and applicable provisions of law to the facts." *Id.*

Section 377.241, Florida Statutes, governs the Department's decisions on oil and gas permits. In *Coastal Petroleum*, this Court held that the Department "correctly determined" that section 377.241 stated a multi-factor balancing test that "requires the agency to 'weigh' the criteria of section 377.241, balancing environmental interests against the right to explore for oil." 766 So. 2d at 228. Under that balancing test, this Court affirmed the Department's denial of a permit to drill for oil off St. George Island, rejecting an ALJ's recommendation to grant the permit. *Id.*

Whether we afford deference to the Department's statutory interpretation, as we did when *Coastal Petroleum* was decided, or apply a *de novo* review, we hold that the Department and this Court were correct that the statute states a list of factors to be weighed, as opposed to a checklist of minimum requirements. *See* § 377.241, Fla. Stat. (2018) (declaring that the Department "shall give consideration to and be guided by" the listed criteria). The issue presented here is whether the Department correctly applied that balancing test in its Final Order, under the facts found by the ALJ. We hold that it did not.

*The First Statutory Factor –*
*The Nature, Character, and Location of the Lands Involved*

Paragraph 109 of the Recommended Order reads:

109. The property upon which the Well Site is to be located has no special characteristics that would make it susceptible to pollution. Although the Well Site is in WCA-3, it is located in the Pocket, an area with existing road access that is *hydrologically isolated from both surface and groundwater and is environmentally degraded and overrun with cattails*. The area is far less

7

likely to impact natural resources than other Department-permitted wells, notably those at Raccoon Point which exist in the Big Cypress National Preserve, in a far more ecologically intact area than here.

(Emphasis added.) Despite these findings, the Final Order denying Appellant's permit application stated that the first factor weighs against issuance because the project site lies within the Everglades ecosystem, which "is world renowned for its unique environmental characteristics." Appellant argues that it was reversible error for the Secretary to substitute its factual findings for the ALJ's factual findings.

The Department asserts it did not reject the ALJ's factual findings, but rather rejected the ALJ's legal conclusion that the land had no "special characteristics," and then gave more weight to the nature of the land factor when re-applying the balancing test. Appellees admit, however, that although the Secretary characterized Paragraph 109 as a conclusion of law, its second and third sentences are factual findings. *Cf. Abrams*, 73 So. 3d at 294 (an agency may not "reject a finding that is substantially one of fact simply by treating it as a legal conclusion."). Appellant correctly asserts that Paragraph 109 is made up entirely of factual findings and that the Secretary improperly relied upon or created an unadopted rule by basing its decision on a "long-standing policy to deny oil and gas permits within lands subject to Everglades restoration."

Appellees insist that the Secretary's "longstanding policy" comment was merely meant to illustrate how rarely permits are issued in these circumstances, and that the Secretary's decision was made simply by reweighing the balancing test of section 377.241 to conclude that the sensitive nature of the land and Appellant's delay in seeking a permit outweighed the prospects of finding oil on a profitable basis. We disagree.

Appellees' argument fails to adequately explain how the Secretary could have accepted the ALJ's factual findings about the land and still concluded that the land was of such a sensitive nature that the first factor weighed against Appellant. We hold, therefore, that the Secretary improperly relied on an unadopted

8

rule which would in practice prohibit all exploratory oil drilling in the Everglades, without statutory authority, as we note below.

Every sentence in Paragraph 109 is a factual finding. *See J.J. Taylor Cos., Inc. v. Dep't of Bus. & Prof'l Reg., Div. of Alcoholic Beverages & Tobacco*, 724 So. 2d 192, 193 (Fla. 1st DCA 1999) (declaring that to assess whether a statement is a factual finding or conclusion of law in order to determine what level of review to apply, "it is the true nature and substance of the determination or ruling by the ALJ that controls the Department's ability to reject the ruling."). In *Goin v. Commission on Ethics*, the hearing officer stated that "there is not sufficient evidence to persuade me that, as a typical consumer in such a transaction, he knew or should have known that it was such a good deal that he must have been receiving a break on the price because of his public position." 658 So. 2d 1131, 1137 (Fla. 1st DCA 1995). The parties disagreed over whether this statement was a factual finding or a conclusion of law. *Id.* This Court held that the hearing officer's statement was an ultimate finding of fact, as it stated violations of a rule or statute. *Id.* at 1138.

Here, the ALJ's ultimate finding of fact was that the land in question did not have any qualities that would make it vulnerable to pollution of the land, aquifer or surface waters, a finding the ALJ supported with examples and facts introduced as evidence. This was a factual finding, because the "true nature and substance" of the statement was to provide a factual basis for the legal conclusion that the first statutory factor did not weigh against issuance of a permit. Because Paragraph 109 consisted of factual findings supported by competent, substantial evidence, we agree with Appellant that the Secretary improperly rejected these factual findings. *See Stinson*, 938 So. 2d at 555.

In addition to rejecting factual findings supported by competent, substantial evidence, the Secretary also erred in relying on facts from outside the record by considering language from the Everglades Forever Act and inferences derived therefrom. *Cf. Gen. Dev. Utils., Inc. v. Hawkins*, 357 So. 2d 408, 409 (Fla. 1978). Although the Secretary commented that the Everglades Forever Act demonstrates a legislative dedication to long-term Everglades restoration, the Everglades Forever Act does not

9

prohibit exploratory-oil drilling. *See generally* § 373.4592, Fla. Stat. Moreover, language from the Everglades Forever Act was never discussed in the proceedings until the Final Order.

In *Hawkins*, an agency issued an order that applied a debt to equity ratio of 62% to 38%; the agency stated that this ratio, which did not appear in the record, was consistent with typical water company stocks and average ratios. 357 So. 2d at 409. The supreme court held that "[t]he arbitrary selection of this ratio as a 'fact' comes from outside the record of the proceeding and plainly violates the notions of agency due process which are embodied in the administrative procedure act." *Id.* The supreme court declared that "[t]he Commission is not obliged to accept either the company's suggested hypothetical or its actual equity/debt ratio if there are valid reasons for rejecting them, but it is required to allow the company to know in advance and to challenge the data on which it chooses to rely." *Id.*

Similarly, in *Lawnwood Medical Center, Inc. v. Agency for Health Care Administration*, an agency reopened the record, reweighed evidence, and recast findings of fact as policy questions to be weighed. 678 So. 2d 421, 425 (Fla. 1st DCA 1996). This Court declared that "[o]fficial recognition is not a device for agencies to circumvent the hearing officer's findings of fact by building a new record on which to make new findings." *Id.* This Court also noted the distinction between rebalancing statutory factors and recasting facts, stating: "Perhaps in a proper case [the agency] might attribute greater weight to certain of the review criteria than that attributed by the hearing officer. The fact is, however, that in this particular case [the agency] did not merely reprioritize the criteria; it recast the facts." *Id.* at 426.

Like in *Lawnwood*, the Final Order here goes beyond simply affording more weight to one statutory factor; rather, the Secretary completely set aside the ALJ's factual findings about the nature of the land. *See* § 120.57(1)(*l*), Fla. Stat. ("The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.").

10

The Secretary described the lands completely differently, using facts from outside the record and without even suggesting that the ALJ's factual findings were unsupported by competent, substantial evidence. In so doing, the Secretary improperly recast factual findings to reach a desired outcome, contrary to law.

*The Second Statutory Factor –*
*The Nature of Ownership, Including Delay in Exercising Rights*

As to the second statutory factor, the Secretary did not disagree with any of the ALJ's factual findings. Instead, the Secretary disagreed with the ALJ's interpretation of section 377.241(2), Florida Statutes, and with the ALJ's legal conclusion that the second factor had little to no weight in the balancing test because Appellant owned both the surface and mineral rights to the land. The Secretary stated that its interpretation – that the second factor weighs against an applicant who sits on his mineral rights, even when there is no divided ownership – was more reasonable than the ALJ's interpretation.

Whether we review the Secretary's interpretation under a de novo standard, as required by Amendment VI, Article V, section 21, Florida Constitution, or with the deference required by our prior decisions, we reach the same conclusion: we reject the Secretary's interpretation of section 377.241(2), as it was both incorrect and clearly erroneous. *See Addison*, 113 So. 3d at 1056. The Whereas clauses cited in the Recommended Order demonstrate the legislature's overriding concern with divided ownership interests. *See* Act Relating to Conservation of Oil, Gas and Mineral Resources and to the Protection of Surface Rights of Landowners, Ch. 61-299, Laws of Fla. (1961) ("WHEREAS, the owners of fee simple titles to the surface rights in granting undivided fractional oil, gas and mineral rights had no intention that such grants should give their grantees the rights to unduly interfere with the potential surface development and use of such lands for farms, groves and ranches, or the building of homes, commercial buildings or other proper and appropriate use as might be indicated by the character or location of the land"); *S. Fla. Racing Ass'n v. State, Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering*, 201 So. 3d 57, 64 (Fla. 3d DCA 2015) (rejecting an agency's interpretation of a statute in part because "the whereas clauses in the 1980 enactment evince a legislative intent

to allow a struggling entity to remain in business during the summer, thereby increasing tax revenues and tourism.").

The very purpose of section 377.241, Florida Statutes, "was to institute a permit process in order to protect landowners from undue burdens from mineral leases." *Thomas G. Mosher & Matthew Schwartz v. Dan A. Hughes Co. & Dep't of Envtl. Prot.*, Case Nos. 13-4254, 13-4920 (DOAH June 3, 2014) (application withdrawn by stipulation July 17, 2014) (internal citation omitted). Although section 377.241(2) does not explicitly mention divided ownership interests, the statute must be "construed in light of the evil to be remedied and the remedy conceived by the Legislature to cure that evil." *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So. 2d 881, 885 (Fla. 1972). Here, Appellant's delay could not interfere with any landowner's surface rights, because Appellant is the owner of the surface rights. There is no rational reason to be concerned about an applicant sitting on his drilling rights when there is no competing surface interest. Because the delay in exercising drilling rights served as the sole basis for the Secretary's conclusion that the second factor weighed against issuance, and because this conclusion was based on a misinterpretation of section 377.241(2), Florida Statutes, we reverse the Secretary's conclusion as to the second statutory factor.

*The Third Statutory Factor –*
*The Likelihood of Discovering Oil in Profitable Quantities*

The third statutory factor requires the Department to assess the "indicated likelihood of the presence of oil . . . in such quantities as to warrant the exploration and extraction . . . on a commercially profitable basis." § 377.241(3), Fla. Stat. (2018). As the Secretary wholly accepted the ALJ's factual findings and conclusions, there is no basis for reversal on the third factor.

*Conclusion*

We hold that the Secretary improperly rejected the ALJ's factual findings on the first statutory factor, recast the facts, and relied on information from outside the record. It was an abuse of discretion to reject, modify, or substitute the ALJ's factual findings, and when ""the reasons for the change are legally insufficient, it is entirely appropriate to remand with instructions

12

to approve the hearing officer's recommendations.'" *Resnick v. Flagler Cty. Sch. Bd.*, 46 So. 3d 1110, 1113 (Fla. 5th DCA 2010) (quoting *Dep't of Prof'l Regulation v. Bernal*, 531 So. 2d 967 (Fla. 1988)). Moreover, we hold that the Secretary misinterpreted section 377.241(2), Florida Statutes, which the ALJ correctly determined is inapplicable when there is no divided ownership interest. Thus, there was no basis for the Secretary to conclude that the first or second factor weighed against issuance of Appellant's oil and gas permit. Accordingly, we reverse and remand for entry of a final order consistent with the Recommended Order and direct the Department to grant Appellant's permit application.

REVERSED and REMANDED.

JAY, J., and LONG, JR., ROBERT E., ASSOCIATE JUDGE, concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Douglas P. Manson, Brian Bolves, William S. Bilenky, Paria Shirzadi Heeter and Christine Senne of Manson Bolves Donaldson Varn, P.A., Tampa, for Appellant.

Robert A. Williams, General Counsel, Jeffrey Brown, Office of General Counsel, State of Florida Department of Environmental Protection, Tallahassee, for Appellee Florida Department of Environmental Protection.

Daniel L. Abbott, Jamie A. Cole, Richard B. Rosengarten, and Adam A. Schwartzbaum of Weiss Serota Helfman Cole & Bierman, P.L., Fort Lauderdale, for Appellee City of Miramar.

Andrew J. Meyers, Broward County Attorney, Michael C. Owens, Senior Assistant County Attorney, and Rocio Blanco Garcia,

Assistant County Attorney, Fort Lauderdale, for Appellee Broward County.

Roy D. Wasson of Wasson & Associates, Chartered, Miami, and Mara Shlackman of Law Offices of Mara Shlackman, P.L., Fort Lauderdale, for Amicus Curiae South Florida Wildlands Association, Inc.