# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-0714
_____

BLUE SEVEN, LLC d/b/a INDIGO
FLOAT,

    Appellant,

    v.

FLORIDA DEPARTMENT OF
HEALTH,

    Appellee.

_____

On appeal from the Florida Department of Health.
Joseph A. Ladapo, Secretary.

May 27, 2026

NORDBY, J.

Appellant Blue Seven, LLC, d/b/a Indigo Float, wants to open a float tank therapy business. To do so, it needs a permit. The Department of Health, however, denied Appellant's permit application (notwithstanding an administrative law judge's recommendation that the Department rescind its denial of that application). As explained below, we set aside the Department's final order and remand for further proceedings.

## I.

Matthew and Jacqueline Stewart own Appellant Indigo Float, a float tank business where customers make appointments to use a "flotation therapy device." These float tanks (also called float pods or float spas) are known under the corporate-designated name of "floatSpa." When a customer enters a private float tank room for a session, the eighteen-inch-deep tank fills with eleven to twelve inches of a concentrated solution of magnesium sulfate (around 1200 pounds of dissolved Epsom salt). The solution is heated to 96 degrees Fahrenheit. The float tank has a double-hinged lid which the customer can close or leave open. During the treatment, the customer "float[s] completely weightlessly" in the tank and "lose[s] track of where the solution ends and . . . where [their] skin begins." Between each session, the solution is drained and filtered.

Because the Department considers float tanks to be public swimming pools that fall under the category "special purpose pools," Appellant sought a permit from the Department. The Department, however, rejected Appellant's application. The case proceeded to a formal hearing before an administrative law judge (ALJ) at the Division of Administrative Hearings (DOAH). Based on his findings of facts, the ALJ found that the Department relied on an unadopted rule in denying Appellant's swimming pool permit application. The ALJ recommended that the Department rescind its denial of the application. The Department rejected the ALJ's recommendation, concluding instead that it did not rely solely on an unadopted rule in denying Appellant's application. The Department found that Appellant also failed to comply with portions of the Florida Statutes and the Florida Administrative Code, which provided a sufficient basis to deny the operating permits. Appellant now challenges the Department's final order.

### A.

The Department oversees the licensing and regulation of public swimming pools. A person or public body seeking to operate a public swimming pool must apply for a permit from the Department. *See* § 514.031(1), Fla. Stat. (2022). The applicant must submit certain information with the application and provide

all required materials to the local county health department, which then forwards the documents to the Department's Tallahassee program office for review. *See* § 514.031(1)(a), Fla. Stat. The Department's pool team, which consists of inspectors and engineers, reviews the drawings and applications to ensure compliance. During this same time, the county health department drafts and provides a letter to the appropriate building officials where the pool is located. The letter informs those building officials that the applicant has started the permitting process, which allows the building officials to issue the applicant a construction permit.

Once construction of the pool is completed, the applicant can submit a request for inspection to the county health department. In this case, William Nowlin of the Duval County Health Department inspected Appellant's float tanks. The purpose of the inspection is to ensure compliance with the plans that the applicant submitted (and the Department approved) and to ensure that the equipment installed functions properly and matches the equipment previously approved. If the inspection reveals that the public pool is in compliance, then the Department issues an initial operating permit and an annual operating permit.

If the public swimming pool fails to meet the statutory requirements, the Department has the authority to grant variances. § 514.0115(9), Fla. Stat.; Fla. Admin. Code R. 64E-9.016. At the Department, Robert Vincent's office oversees the variance process for public swimming pools, including reviewing all variance applications and placing them on the agenda for the Public Swimming Pool Advisory Board. The Advisory Board reviews all variance applications.

## B.

After a preliminary attempt to obtain permits failed, Appellant again applied for permits to operate its float tanks. It also sought a variance. The Advisory Board voted unanimously to deny the variance application. Yet the Department did not accept the Advisory Board's recommendation. It approved the variance in part and denied it in part subject to the completion of specific conditions or "provisos." After conducting an initial construction inspection, the Department identified multiple issues that

Appellant needed to address before the company could be issued a permit.

Ultimately, the Department denied Appellant's application for public pool operating permits. Appellant then sought an administrative hearing, and the case was ultimately referred to DOAH.

C.

Amongst Appellant's claims at DOAH was an unadopted rule challenge. Appellant argued the Department's denial of its application was based on an unadopted rule in violation of section 120.57(1)(e)1., Florida Statutes. This claim centered on a three-page document, titled, "2020 Float Tank Code," available on the Department's website during Appellant's permit application proceedings. The 2020 Float Tank Code was the third revision of this document; the Department had created and subsequently revised versions of this document in 2018 and 2019, under different labels.

The opening paragraph of the Float Tank Code stated:

To acquire an operating permit from the Department of Health, a special purpose pool owner *shall acquire a variance* from the Department or utilize one of the manufacturer's variances, and comply with the applicable provisos listed after the state codes cited below. The operation and design construction of Epsom Salt Float Rooms and Tanks are often in violation of certain requirements of Florida Administrative Code (FAC) Chapter 64E-9, and the Florida Building Code (FBC) Chapter 4, section 454.1 that generally apply to conventional pools as follows.

2020 Float Tank Code (emphasis added).

The Float Tank Code also listed numerous provisions of the Florida Building Code, as well as rule 64E-9.004(5), as governing provisions that float pods often violate. It then listed several mitigation measures that owners must take to receive approval for

4

a permit. The Department's 2021 letter partly approving Appellant's variance imposed many of the same requirements that were listed in the 2020 Float Tank Code.

Following a formal hearing, the ALJ made various factual findings and conclusions of law. The ALJ found that, "based on the persuasive testimony and evidence presented, and a reading of the Florida Building Code, . . . float tanks do not fall within the definition of a special purpose pool." Thus, "[b]y improperly classifying float pods as special purpose pools, [and] creating a Float Tank Code with mandatory language that it applies to commercial float tank owners," through its permitting framework and variance process, the Department was requiring applicants to try to fit a "square peg" within a "round hole."

The ALJ found "obvious and substantial overlap between the [Department's 2021] variance letter, and the Float Tank Code." He also found that "[t]he preponderance of the evidence established that the Department relied on portions of the Float Tank Code (*i.e.,* variances and provisos) in considering and denying [Appellant]'s permit application." The ALJ further found:

> The preponderance of the evidence established that the Float Tank Code meets the definition of a rule because it is a statement of general applicability that implements, interprets, or prescribes law or policy. The competent, substantial evidence presented at the final hearing established that the Department created the Float Tank Code, and, as found in paragraph 44 above, the Department relied on portions of it in considering and denying [Appellant]'s permit application. Yet, the Department has not promulgated the Float Tank Code as a rule.

This finding referenced paragraph 44 of the ALJ's recommended order. Paragraph 44 discussed the Department's April 6, 2021, letter and how it imposed many of the same requirements as the 2020 Float Tank Code. The ALJ concluded:

> The competent, substantial evidence presented at the final hearing established that the Department has

5

prepared, and relied, on versions of a Float Tank Code document in 2018, 2019, and 2020—none of which the Department promulgated through the rulemaking process—and has decided to regulate the permitting of float tanks through variances and provisos, as listed in those Float Tank Code documents.

Having concluded that the Department had improperly relied on an unadopted rule in denying Appellant's permit application, the ALJ expressly declined to "address other elements of [Appellant]'s entitlement to the permit." Ultimately, based on his conclusions concerning the unadopted rule, the ALJ recommended that the Department rescind its denial of Appellant's swimming pool operating permit application.

Both parties filed exceptions to the recommended order. Appellant requested one exception, directed to the ALJ's factual finding in a footnote that "float tanks appear to fall under the statutory definition of a public swimming pool in Florida." Appellant claimed that this finding was dicta and pointed to the ALJ's identification of "credible testimony" that supported a finding that "float tanks are not public swimming pools." Appellant further argued that because "the ALJ rejected the Department's argument and found that float tanks are not special purpose pools," the other dictum was perhaps a "typographical error."

The Department filed two exceptions. First, the Department moved for the agency to modify paragraph 78 of the recommended order and substitute the following conclusion:

> Although [Appellant] established that the Department relied on an unadopted rule, the basis for denying the operating permits was not limited to the variance provisos referenced in the Float Tank Code. [Appellant] failed to comply with the requirements of chapter 514, Florida Statutes, and chapter 64E-9, Florida Administrative Code, as evidenced by the April 8, 2022 inspection, the December 21, 2021 denial letter, and the record. [Appellant]'s failure to pass the inspection, which among other items, specifically required the anti-entrapment device mandated by section 514.0315,

6

Florida Statutes, forms a sufficient basis to deny the operating permits, notwithstanding the Float Tank Code.

The Department argued that this conclusion was as or more reasonable than the ALJ's finding. The Department asserted that the agency "has substantive jurisdiction to interpret chapter 514, Florida Statues, as well as chapter 64E-9, Florida Administrative Code." The Department claimed that several of the ALJ's factual findings and conclusions of law "recognize[d] that the Department's denial of [Appellant]'s swimming pool applications was not based solely on what the ALJ found to be an unadopted rule."

Second, the Department took exception to the ALJ's ultimate recommendation that the agency rescind its denial of Appellant's permit application. The Department moved for the agency to rescind its denial to the extent that the agency relied on an unadopted rule. But the Department urged the agency to affirm the denial based on Appellant's failure to comply with the requirements of Chapter 514, Florida Statutes, and Chapter 64E-9, Florida Administrative Code.

In its final order, the Department adopted its own exceptions and rejected Appellant's requested exception. The Department adopted the ALJ's factual findings but concluded that the denial of Appellant's permit was based on more than just the unadopted rule. The Department therefore affirmed its denial of Appellant's public swimming pool operating permit.

II.

Appellant challenges the Department's final order on the grounds it was not supported by competent, substantial evidence and that the fairness of the proceedings may have been impaired by a material error in procedure. *See* § 120.68(7)(b)–(c), Fla. Stat. Appellant argues the Department improperly rejected the ALJ's factual findings and conclusions of law and created its own factual findings and legal conclusions as to the alternate grounds for the permit denial based on Chapter 514 of the Florida Statutes and Chapter 64E-9 of the Florida Administrative Code.

A.

This Court reviews final agency action based on the framework established by section 120.68, Florida Statutes. We must affirm the agency's action unless we find "a ground for setting aside, modifying, remanding, or ordering agency action or ancillary relief." § 120.68(8), Fla. Stat.; *see also* § 120.68(7), Fla. Stat. (establishing the grounds for relief from agency action). Generally, this Court reviews an agency's findings of facts for competent, substantial evidence while reviewing legal conclusions de novo. *Robinson v. Comm'n on Ethics*, 242 So. 3d 467, 470–71 (Fla. 1st DCA 2018). Further, "[a]n administrative agency abuses its discretion when it disregards an ALJ's factual findings supported by competent, substantial evidence." *Chappell Schs., LLC v. Dep't of Child. & Fams.*, 332 So. 3d 1060, 1063 (Fla. 1st DCA 2021) (citing *Strickland v. Fla. A&M Univ.*, 799 So. 2d 276, 278 (Fla. 1st DCA 2001)). We afford no deference to the agency's interpretation of statutes. Art. V, § 21, Fla. Const.

Section 120.57(1)(e)1., Florida Statutes, establishes that "[a]n agency or an administrative law judge may not base agency action that determines the substantial interests of a party on an unadopted rule or a rule that is an invalid exercise of delegated legislative authority." § 120.57(1)(e)1., Fla. Stat. When a party challenges an agency's action, he or she may claim that it was based on an unadopted rule. § 120.57(1)(e)2., Fla. Stat. When there are material facts in dispute, challenges to agency actions proceed to a hearing before an ALJ. § 120.57(1)(a), Fla. Stat. The ALJ then issues a recommended order with factual findings about whether the agency based its action on an unadopted rule. § 120.57(1)(e)1., (k), Fla. Stat.

After the hearing, an agency may not reject or modify an ALJ's factual findings unless they are not supported by competent, substantial evidence. *Stinson v. Winn*, 938 So. 2d 554, 555 (Fla. 1st DCA 2006); *see* § 120.57(1)(l), Fla. Stat. (declaring that an agency may not reject or modify an ALJ's findings of fact "unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with

8

essential requirements of law"). When competent, substantial evidence supports an ALJ's factual findings, "the agency cannot reject them even to make alternate findings that are also supported by competent, substantial evidence." *Lantz v. Smith*, 106 So. 3d 518, 521 (Fla. 1st DCA 2013) (quoting *Resnick v. Flagler Cnty. Sch. Bd.*, 46 So. 3d 1110, 1112–13 (Fla. 5th DCA 2010)). Likewise, a reviewing agency may not reweigh evidence presented at a hearing at DOAH, nor may it judge the credibility of witnesses. *Rogers v. Dep't of Health*, 920 So. 2d 27, 30 (Fla. 1st DCA 2005) (citing *Aldrete v. Dep't of Health Bd. of Med.*, 879 So. 2d 1244, 1246 (Fla. 1st DCA 2004)); *see also Stinson*, 938 So. 2d at 555 (the ALJ "is entitled to rely on the testimony of a single witness even if that testimony contradicts the testimony of a number of other witnesses").

An agency has more authority to reject an ALJ's conclusions of law. But still, under section 120.57(1)(l), an administrative agency may only reject or modify an ALJ's conclusions of law if it has substantive jurisdiction over the subject of the conclusion and if its substituted conclusion is as or more reasonable than the one rejected. *Barfield v. Dep't of Health*, 805 So. 2d 1008, 1011 (Fla. 1st DCA 2001). "[T]he Legislature clearly intended to restrict agency review of legal conclusions in a recommended order to those that concern matters within the agency's field of expertise." *G.E.L. Corp. v. Dep't of Env't. Prot.*, 875 So. 2d 1257, 1264 (Fla. 5th DCA 2004).

Moreover, an agency cannot reject a hearing officer's factual findings by treating the issue as one of policy. *Lawnwood Med. Ctr. v. Agency for Health Care Admin.*, 678 So. 2d 421, 425 (Fla. 1st DCA 1996) (citing *Balsam v. Dep't of HRS*, 486 So. 2d 1341 (Fla. 1st DCA 1986)). Rather, an agency may "apply its policy to the facts which are supported by competent substantial evidence." *Id.*; *see also Heifetz v. Dep't. of Bus. Regul., Div. of Alcoholic Beverages & Tobacco*, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985) ("Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact." (citing *McDonald v. Dep't. of Banking & Fin.*, 346 So. 2d 569 (Fla. 1st DCA 1977))). "[T]he obligation of the agency to honor the hearing officer's findings of fact cannot be avoided by categorizing [or labeling] a contrary

finding as a conclusion of law." *Viering v. Fla. Comm'n on Hum. Rel. ex rel. Watson*, 128 So. 3d 967, 969 (Fla. 1st DCA 2013) (alteration in original) (parenthetically quoting *Pillsbury v. Dep't of HRS*, 744 So. 2d 1040, 1041 (Fla. 2d DCA 1999)).

B.

In our view, this case turns on whether the ALJ's finding that the Department relied on an unadopted rule in denying Appellant's permit application was a factual finding or a conclusion of law. This can sometimes be a close call, especially when conclusions of law and findings of fact are intertwined within a recommended order. To make this determination, we look to the substance of the decision in an administrative order. *Sierra Club v. Dep't of Env't Prot.*, 357 So. 3d 737, 741 (Fla. 1st DCA 2023) (citing *J.J. Taylor Co. v. Dep't of Bus. & Pro. Regul., Div. of Alcoholic Beverages & Tobacco*, 724 So. 2d 192, 193 (Fla. 1st DCA 1999)). Where a paragraph "substantially addresses matters of fact, then this Court treats it as a finding of fact, not a conclusion of law." *Id.* (citing *Kanter Real Est. LLC v. Dep't of Env't Prot.*, 267 So. 3d 483, 488–89 (Fla. 1st DCA 2019)).

The Department does not dispute that one of the ALJ's factual findings was that the agency considered and relied on the unadopted Float Tank Code in denying Appellant's permit application. Instead, the Department disputes that the ALJ made a factual finding that the agency relied *only* on the Float Tank Code in denying Appellant's permit application.

Considering the recommended order in its entirety, however, leads us to conclude that the Department improperly rejected this factual finding by recasting the facts to affirm its denial of Appellant's permit application. *See Kanter*, 267 So. 3d at 490 (citing *Lawnwood Med. Ctr.*, 678 So. 2d at 425). In doing so, the Department veered beyond the statutory guardrails of section 120.57. *See* § 120.57(1)(l), Fla. Stat. ("The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.");

10

*see also Kanter*, 267 So. 3d at 491. One of the ALJ's factual findings was that "despite its admitted lack of rulemaking authority, the Department has developed and applied the Float Tank Code as statements of general applicability that implement and prescribe law and policy regarding the regulation of float tanks." This factual finding led to the ALJ's conclusion that the Department "relied" on portions of the Float Tank Code in considering and denying Appellant's permit application. Based on his finding that Appellant established "that the Department relied on an unadopted rule in denying its permit applications," the ALJ made clear that he would not "address other elements of [Appellant]'s entitlement to the permit."

Rather than explain why the ALJ's factual finding on this point was not supported by competent substantial evidence, as required under section 120.57(1)(l), the Department instead attempted to recast the fact in its favor, concluding that it *also* relied on other statutory and regulatory authorities to deny Appellant's permit application. But the ALJ offered little to no discussion of these other authorities. And the ALJ made no factual findings or conclusions of law to resolve the disputed issues over how those other authorities applied to Appellant's permit application. Yet despite those unresolved disputed issues, the Department concluded in its final order that those unaddressed other authorities provided a sufficient alternate basis to deny the permits.

Because the Department improperly rejected the ALJ's factual finding that the Department relied on an unpromulgated rule in denying Appellant's permit application, we set aside the final order and remand for further proceedings.

SET ASIDE and REMANDED.

LEWIS and M.K. THOMAS, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


John E. Terrel, Law Office of John E. Terrel, Tallahassee, for Appellant.

Sarah Young Hodges, Chief Appellate Counsel, Florida Department of Health, Tallahassee, for Appellee.